IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00742-RBJ-NYW

MICHAEL A. COLLINS,

      Plaintiff,

v.

TRANS UNION, LLC,
EXPERIAN INFORMATION SOLUTIONS, INC., and
EQUIFAX INFORMATION SERVICES LLC,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendant Experian Information Solutions, Inc.'s ("Experian") Motion for Summary Judgment [#151, filed April 27, 2015] and Defendant Trans Union, LLC's ("Trans Union") Motion for Summary Judgment [#156, filed April 28, 2015].[1] These Motions were referred to the undersigned Magistrate Judge pursuant to the Order of Reference dated September 18, 2014 [#50] and memorandum dated May 4, 2015 [#158]. After carefully considering the Motions and related briefing, the entire case file, and the applicable case law, I respectfully RECOMMEND that Defendants' Motions for Summary Judgment be GRANTED.

**PROCEDURAL HISTORY**

      Given the long procedural history of this case, the court will only recount the portions relevant to the remaining named Defendants. Plaintiff Michael A. Collins ("Plaintiff" or "Mr.

Collins") initiated this action on March 12, 2014, by filing a *pro se* Complaint for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, as to Defendants Trans Union, Experian, and Equifax Information Services, LLC ("Equifax").[2] Mr. Collins alleges that these Defendants had falsely reported his credit history to third parties. [#1]. Plaintiff filed an Amended Complaint on June 26, 2014, adding, in pertinent part, the following claims against Trans Union, Experian and Equifax:[3] Negligence Per Se; Negligent Misrepresentation; False Representation; Fraudulent Misrepresentation; Fraud in the Inducement; Fraudulent Concealment; Violation of the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101 *et seq.*; and a request for a Temporary Restraining Order. [#7]. Equifax, Trans Union, and Experian respectively answered the Amended Complaint on July 24, 2014 [#15, #17, #19]. The court then granted a Stipulated Motion to Dismiss Plaintiff's Motion for Temporary Restraining Order or Preliminary Injunction on August 7, 2014. [#23].

The court held a Scheduling Conference on October 14, 2014, at which the Parties were ordered to complete discovery by January 30, 2015 and file dispositive motions on or before March 6, 2015. [#69, #70]. On November 24, 2014, with leave of court, Plaintiff filed a Second Amended Complaint ("SAC") omitting the claim for Negligence *Per Se*. [#84].[4] Plaintiff seeks

---

[1] For the purposes of this Recommendation, I will refer to Experian and Trans Union as "Defendants."

[2] Equifax did not file a Motion for Summary Judgment, but the court includes it in the procedural history because it appears that the case is proceeding to trial with Equifax.

[3] Mr. Collins also added LexisNexis as a Defendant, but those claims were dismissed pursuant to a Stipulation on January 2, 2015. [#100].

[4] Plaintiff also added Greystone Alliance, LLC ("Greystone") as a Defendant, and asserted various claims against it. [#84]. Ultimately, Judge Jackson awarded Plaintiff statutory damages in the amount of $ 1,000 against Greystone at an April 8, 2015 evidentiary hearing, after a default judgment had been awarded against it. [#142].

damages in the amount of $ 71,492,859, jointly, as to Trans Union and Experian.[5]  [#84 at 23].

On December 8, 2014, Trans Union and Experian filed an Answer to the SAC [#87, #89].  The

Parties then sought to extend the deadlines in the Scheduling Order, and dispositive motion

deadline was set for April 28, 2015.  [#122].

Experian filed its pending Motion for Summary Judgment on April 27, 2015 [#151] and

Trans Union filed its pending Motion for Summary Judgment on April 28, 2015 [#156].[6]  On

May 13, 2015, Plaintiff moved for an extension of three weeks' time to file his Response to the

Motions for Summary Judgment.  [#167].  This court denied that motion on May 14, 2015,

noting that the Final Pretrial Conference was scheduled for July 9, 2015 and a three-day jury trial

was set to commence on July 20, 2015.  [#170].  The following day, Plaintiff filed an Unopposed

Motion to Continue Trial Date and for an Extension of Time to File a Response to Defendants'

Motions for Summary Judgment.  [#171].  The court denied that motion on May 22, 2015.

[#172].  To date, Plaintiff has not filed any response to either of the instant Motions for

Summary Judgment.

Plaintiff is a resident of Colorado.  [#84 at ¶ 4].  The court exercises jurisdiction over this

civil action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p and exercises supplemental

jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

### STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[5] Specifically, and as to each Defendant, Plaintiff seeks $ 17,389,966 in actual damages (including non-economic and statutory damages) and $ 53,517,464 in potential loss of income. [#64].

[6] Trans Union sought and received leave to file an additional twenty pages, and submitted a 40 page Motion.  [*See* #146, #147].

Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

In reviewing a motion for summary judgment the court views all evidence in the light most favorable to the non-moving party. *See Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1213 (10th Cir. 2002). However, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir. 1994) (citation omitted). When, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998) (citation omitted). *See also*

*Anderson*, 477 U.S. at 256 (The nonmovant "may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."). Conclusory statements based merely on speculation, conjecture, or subjective belief are not competent summary judgment evidence. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

"A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a *pro se* litigant, including … summary judgment proceedings." *Id.* at n. 3 (citations omitted). However, the court cannot be a *pro se* litigant's advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n. 1 (10th Cir. 2008). "Although [o]ur summary judgment standard requires us to view the facts in the light most favorable to the non-moving party[,] it does not require us to make unreasonable inferences in favor of the non-moving party." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (quoting *Starr v. Downs,* 117 Fed. App'x. 64, 69 (10th Cir. 2004)). Because Mr. Collins failed to file a response to either Motion for Summary Judgment, the court deems the properly supported facts offered by Trans Union or Experian as true. *See* Fed. R. Civ. P. 56(e)(2); *Lammle v. Ball Aerospace & Techs. Corp.*, Case No. 11-cv-3248-MSK-MJW, 2013 WL 4718928, *1 (D. Colo. Sept. 1, 2013). In doing so, however, the court has reviewed the entirety of the exhibits submitted by Defendants to ascertain the context of such statements. The court may not enter summary judgment unless Trans Union and Experian carry their respective burdens under Rule 56 of the Federal Rules of

Civil Procedure.  *See Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).

**FACTUAL ALLEGATIONS**

This court has reviewed the facts as submitted and, without Responses, construed to the best of its ability any disputed fact favorably to the non-movant.  The material facts are as follows.  Mr. Collins is an individual.  Trans Union are consumer reporting agencies ("CRA") as defined by the FCRA that gather credit and public record information originated by others and make that information available to parties engaged in credit related and other transactions.  [#156 at ¶ 6; #150 at ¶ 10].  A "consumer report" provides credit information to a credit grantor, insurer, or employer that is used to evaluate a consumer's credit.  [#150 at ¶ 11].  A "consumer file disclosure" or "credit file disclosure" is the form in which CRAs provide individual consumers with their credit information.  [*Id.*]

<u>Prior Litigation</u>

On January 22, 2009, Plaintiff acting *pro se* filed a complaint in Arapahoe County District Court against Experian and Trans Union claiming violations of the FCRA.  [#156 at ¶ 8].  On February 12, 2009, Trans Union removed the action to this District Court (the "First Action").  [Case No. 09-cv-00300-MSK-CBS, ECF[7] No. 1].  In his complaint, Plaintiff alleged fifteen violations of the FCRA as to the following eight accounts: Bank One/Chase account #...0941, Household Finance Corporation account #...9497, Household Finance Corporation account #...1649, HSBC account #…4494, Household Bank account #...4401, HSBC Auto Finance account #...0494 Washington Mutual Home Loans account #...6661, United Resource Systems, Inc. account #...57N1.  (*Id.* at ECF No. 1-2; #156 at ¶ 8).

---

[7] I use the convention of "ECF No." to refer to the docket entries of the First Action, to avoid any confusion with the docket entries in this instant action.

*Trans Union*.   On May 28, 2009, Plaintiff executed a Confidential Settlement and Release Agreement with Trans Union (the "Trans Union Agreement").  [#156-2 at ¶ 10; #155-1]. On June 1, 2009, Plaintiff and counsel for Trans Union filed a Stipulation of Dismissal with Prejudice in the First Action, and the court issued an order dismissing all claims as to Trans Union with prejudice.  [Case No. 09-cv-00300-MSK-CBS, ECF No. 59, No. 65; #156-2 at ¶ 10]. By the terms of the Trans Union Agreement, Plaintiff agreed: (1) to dismiss his claims with prejudice against Trans Union in exchange for a confidential amount of money; (2) to release and discharge Trans Union from any and all claims, actions, causes of action and suits of any kind, known or unknown, that were asserted or could have been asserted in the 2009 Lawsuit; and (3) that the information in his May 28, 2009 Trans Union consumer disclosure, with the exception of seven accounts, was accurate.  [Litwa Declaration, #156-2 at ¶ 10; #155-1 at ¶¶ D, I; Deposition of Michael Collins ("Collins Deposition"), #155-12 at 85:22-86:14].  At the time, Plaintiff was engaged in litigation or direct communications with the creditors of the excepted seven accounts, and thus agreed that Trans Union would continue to report those accounts "as reported by those entities and will update those accounts … according to any agreement reached by those entities and Plaintiff."  [Litwa Declaration, #156-2 at ¶ 10].  In the Agreement, Plaintiff confirmed the accuracy of the accounts on which he had sued, and agreed that he had "not relied upon any statement or representation pertaining to this matter made by Defendant or its counsel." [#155-1 at 6, ¶ J].

*Experian*.   On August 4, 2009, Plaintiff executed a Settlement Agreement and Release with Experian ("Experian Agreement").  [#150-1].  On July 9, 2009, Plaintiff filed a Motion to Dismiss Experian with Prejudice in the First Action, and the court issued an order dismissing all

claims as to Experian with prejudice the following day.   [Case No. 09-cv-00300-MSK-CBS, ECF No. 66, ECF No. 67].

Attached to the Experian Agreement was a credit disclosure from Experian dated July 31, 2009 ("2009 Disclosure").   [#150-2.  The 2009 Disclosure included the following accounts: (1) Allied Interstate; (2) Alpine Credit; (3) Applied Bank; (4) & (5) Bank of America/Countrywide Home Loans (two accounts); (6) Bonded Collect Services (BC Services); (7) & (8) CCB Incorporated and Accounts Receivables Management; (9), (10) & (11) Household Finance (three separate account numbers); (12) & (13) HSBC Bank (two accounts); (14) HSBC Auto Finance; (15) Midland Credit Management; (16) Professional Recovery Service; (17) United Resource Systems; (18) Wakefield & Associates; (19) Bank One/Texas Chase Finance; and (20) LVNV Funding.  [*Id.*]   The credit disclosure also included the following public records: Arapahoe County Recorder Case No. 5CV5000049 and Colorado Federal Court Doc. No. 216858.  [*Id.*] As part of the Experian Settlement Agreement, Plaintiff reviewed and confirmed that the credit disclosure was accurate.  [#150-1 at ¶ 5].  He further agreed that he entered into the Experian Agreement "freely and voluntarily," and that it constituted a good faith settlement of the First Action.  [*Id.* at ¶ 8].  Finally, he acknowledged that the Experian Agreement superseded all prior agreements, negotiations, and discussions between him and Experian "with respect to the subject matter covered" thereby; and that in entering the Experian Agreement, they were "not relying upon any representations or warranties made by anyone other than those terms and provisions expressly set forth in [the] agreement."  [*Id.* at ¶ 10].

<u>Allegations of Fraud</u>

Prior to executing the Settlement Agreements, Plaintiff asked Defendants to remove the information he disputed on his credit report as identified in the First Action.  [Collins Deposition,

#155-12 at 76:15-21].   Plaintiff alleges that Defendants misrepresented that only the original

creditor could remove that information and that "the statute of limitations [had] passed."   [*Id.* at

76:23-77:2, 79:5-12; #150-3 at 247:19-248:21, 249:8-21].[8]   During his deposition, Plaintiff

disagreed that he had "not relied upon any statement or representation pertaining to [the First

Action] by Defendant or its counsel."   [*Id.* at 84:8-12].   Plaintiff testified that he relied on

statements made by defense counsel regarding the statute of limitations and that only the creditor

could remove disparaging information from a credit report.   [*Id.* at 84:13-16].   He further

testified that he signed the Trans Union Agreement "[i]n order to settle [the case], I didn't feel I

had any other choice but to sign it, and … some of the paragraphs in there I either didn't

understand what I was signing or I did not … [*Id.* at 84:17-23].   Specifically, Plaintiff believes he

misunderstood the meaning and application of Paragraph D of the Trans Union Agreement [*id.* at

88:4-8], which reads:

> Plaintiff states that he has reviewed his Trans Union credit file dated May 28,
> 2009, attached hereto as **Exhibit 1**, and that the information contained in that
> report belongs to Plaintiff and is accurate except that Plaintiff is still in litigation
> and/or negotiations with the entities reporting accounts referenced in paragraph
> "A" above.   Trans Union agrees to report those accounts still in dispute as
> reported by those entities and will update those accounts listed in paragraph "A"
> according to any agreement reached by those entities and Plaintiff.

[#155-1 at 5].[9]   Plaintiff conceded at his deposition that no one prevented him from seeking his

own legal advice before executing the Settlement Agreements, but he asserted that he lacked the

financial resources to do so.   [Collins Deposition, #155-12 at 88:9-14].   He acknowledged that in

signing the Trans Union Agreement he agreed that all the accounts reporting on his May 28,

---

[8] Counsel for Defendants deposed Plaintiff at the same deposition, held January 22, 2015.   [*See* #155-12 and #150-3].

[9] Paragraph 5 of the Experian Agreement reads, "Plaintiff has reviewed a copy of his Experian credit disclosure dated July 31, 2009, a copy of which is attached as Exhibit A.   Plaintiff states that all information contained in the Experian credit disclosure is accurate.   [#150-1 at 4].

2009 Trans Union credit report were accurately represented (except for those listed in paragraph A), but that he agreed by mistake because the information was not accurate as reported. [*Id.* at 90:5-16]. Plaintiff testified that: (1) he felt pressured to sign the Trans Union Agreement "if [he] wanted to settle [the case] and clear [his] credit report"; (2) he needed to remove the disparaging information from his consumer report "because [he] needed to go try to make a living"; and (3) he did not realize that by signing the Agreement he was releasing his claims as stated in the First Action as to Trans Union. [*Id.* at 90:24-92:4, 126:3-16]. Plaintiff affirmed that Trans Union did not prevent him from reviewing the Agreement or seeking an attorney to review it on his behalf, but stated that "they never told me that I should get counseling or get an attorney." [*Id.* at 92:5-10].

<u>FCRA Allegations</u>

Plaintiff claims Defendants reported false information as to his credit history "from at least March 2012 through the present," and have reported "the same or similar inaccurate information since about 2005 or 2006," thereby violating 15 U.S.C. §§ 1681i(a), 1681i(b), 1681i(c), 1681c(4), 1681c(5), 1681e(a), 1681e(b), 1681e(c), 1681g(a), 1681g(2)   [#84 at ¶¶ 10, 90]. Plaintiff pleaded in his SAC that the false information relates to accounts held by the following entities: Applied Bank; Bank of America Home Loans; Household Finance; HSBC Bank; United Resource Systems; Alpine Credit; Bonded Collect Services; Wakefield & Associates; Accounts Receivables Management; HSBC Auto Finance; CCB Incorporated; Midland Credit Management; Professional Recovery Service; Washington Mutual; National Credit Systems; NCO Fin/35; Allied Interstate; and Amchek Collections. [#84 at ¶ 11].[10]

---

[10] Plaintiff did not include corresponding account numbers. [*See id.*]

Plaintiff also claims Defendants inaccurately reported civil judgments obtained against him in Arapahoe County District Court Case No. 2011-CV-002563 and Arapahoe County District Court Case No. 2013-CV-758.  [#84 at ¶¶ 33, 37].

Plaintiff subsequently served Experian with written discovery requests that implicated those accounts plus: Arapahoe County Recorder No. 5CV500049; Colorado Federal Court Doc. No. 216858; Bank One Texas/Chase Auto Finance account #...0941; Countrywide Home Loans account #...7075; LVNV Funding Account #...4494; Greystone Alliance account #...8144; Bureau of Collection Recovery account #...7939; Arapahoe County District Court Case No 2011-CV-2563, and Arapahoe County District Court Case No 2013-CV-758.  [#151-7 at 10-11]. Trans Union has similarly briefed its Motion so as to consider these accounts.  [#156 at ¶ 7].

To be complete in the consideration of the presented issues, and in light of the fact that Plaintiff is proceeding *pro se*, the following analysis incorporates the accounts as pled in the SAC and supplemented by Plaintiff's written discovery.  [*See* #150-3 at 139:11-140:3, 143:22-144:3 (confirming that the accounts listed in the written discovery request represent a complete list of the accounts at issue)].

## ANALYSIS

### I.    The Settlement Agreements

Defendants argue that their respective Settlement Agreements preclude all of Plaintiff's claims against Trans Union and Experian. [#156 at 9-11]  In his SAC, Plaintiff asserted that the Agreements are not binding because he was fraudulently induced to enter them.  [#84 at ¶¶ 13-22]. To establish a claim of fraud, Plaintiff must demonstrate (1) Defendants made a misrepresentation of a material fact; (2) Defendants knew the representation was false; (3) he was not aware the representation was false; (4) the representation was made with the intention

that it be acted upon; (5) he acted in justifiable reliance on the representation; and (6) such reliance resulted in damage to him. *See Medcorp, Inc. v. Pinpoint Technologies, Inc.*, No. 08–cv–00867–MSK–KLM, 2009 WL 3158130, at *4 (D. Colo. Sep. 24, 2009) (citing *J.A. Walker Co., Inc. v. Cambria Corp.,* 159 P.3d 126, 132 (Colo. 2007)).[11]

Plaintiff alleges that counsel for Defendants induced him to enter into the Settlement Agreements by misrepresenting that the statute of limitations governing his FCRA claims had run and that Defendants could not delete information on his credit disclosure prior to executing the Settlement Agreements.[12] [#84 at ¶¶ 15-17]. Neither Experian nor Trans Union argues that if

---

[11] Plaintiff's claims for Negligent Misrepresentation, False Representation, Fraudulent Misrepresentation, and Fraudulent Concealment share the elements of knowledge of falsity and justifiable reliance and are thus subsumed within this court's analysis of the Fraudulent Inducement claim. *See, e.g., Allen v. Steele*, 252 P.3d 476, 482-83 (Colo. 2011) (allowing that in limited circumstances an attorney may be liable to a non-client for negligent misrepresentation, and listing the factors as, "(1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment"); *Rhino Linings USA, Inc. v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 148 (Colo. 2003) (A misrepresentation, which is a false or misleading statement that induces the recipient to act or refrain from acting, is actionable when it is made "either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive the plaintiff"); *Williams v. Boyle*, 72 P.3d 392, 399-400 (Colo. App. 2003) (To prove a claim of fraudulent concealment, a plaintiff must show: (1) concealment of a material fact that in equity and good conscience should be disclosed; (2) knowledge on defendant's part that such a fact is being concealed; (3) ignorance of that fact on plaintiff's part; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages).

[12] Specifically, Plaintiff claims: "immediately prior to entering into the settlement agreements in 2009, [Defendants] represented to [him] that the statute of limitations had passed and as such they would seek dismissal on those grounds; that they could not remove or correct the inaccurate account information or delete any of the accounts that [were] reporting inaccurate information; and that the only legal recourse [he] has was … to go after the furnishers themselves." [#84 at ¶ 14].

Plaintiff further claims that Defendants: "concealed the fact that there is an exception to the statute of limitations for continuing violations of the Act; concealed that fact that it was not

such statements were made, they were true and non-material. [#151; #156].   Instead, Defendants

argue that Plaintiff cannot prove counsel made false statements, the statements were made with

knowledge of their falsity, or that he justifiably relied on those statements.   [#151 at 10-11; #156

at 36-37].   Specifically, Defendants point out that Plaintiff in his deposition could not recall the

specific statements he claims are misrepresentations or identify the parties responsible for the

statements.[13]  [#151 at 11; #156 at 37].

   But Plaintiff testified at deposition that in conversations predating the Parties' execution

of the Settlement Agreements, counsel for Defendants represented that only the creditor could

remove derogatory information and that the statute of limitations had expired [Collins

Deposition, #150-3 at 247:20-248:8; #155-12 at 76:18-77:2, 79:5-18].   He also identified Edward

Chang, "Martin Thurnwicky or whomever, and …a lady for Equifax, Cara something," as

attorneys responsible for making the statements.   [#155-12 at 80:6-14].[14]   Finally, Plaintiff

claimed and then testified that he was alerted to the fact that Defendants had misrepresented

---

necessary for [him] to file a lawsuit against each and every person who furnished inaccurate
information to the CRAs concerning [him]; and concealed the fact that they could have simply
corrected or deleted the inaccurate information instead of forcing [him] to enter into litigation
with each and every person who furnished inaccurate information to the CRAs." [*Id.*]

[13]  Experian also argues Federal Rule of Evidence 408 for the proposition that statements made
in the course of the Parties' settlement negotiations are inadmissible to prove subsequent tort
claims.  [#150 at 10 n. 5].  However, the statements at issue are submitted as evidence of
counsels' alleged misrepresentations, rather than as evidence to prove Defendants' liability for
the FCRA violations asserted in the First Action.  *Cf. Big O Tire Dealers, Inc. v. Goodyear Tire
& Rubber Co.*, 561 F.2d 1365, 1372-73 (10th Cir. 1977) *cert. dismissed,* 434 U.S. 1052 (1978)
(affirming district court's decision to allow plaintiff to submit as evidence communications
between parties as "simply business communications" over defendant's objection that such
communications constituted compromise negotiations).  Therefore, while it need not reach this
issue, the court finds this argument inapposite.

[14]  The docket sheet for Case No. 09-cv-00300-MSK-CBS reflects the following: Ms. Cara L.
Hergenroether was counsel of record for Equifax Information Services, LLC; Mr. Martin E.
Thornthwaite was counsel of record for Trans Union; and Mr. Edward S. Chang was counsel of
record for Experian.

material facts to him only after he became involved in litigation with a different party in February 2013. [#84 at ¶ 15; Collins Deposition, #155-12 at 80:15-20].

The court first turns to the issues of the statements themselves: (1) whether such statements were made (Trans Union's and Experian's arguments) and (2) whether counsel had knowledge of their falsity in making the purported statements (Experian's argument). In his SAC, Mr. Collins asserts that he "discovered the fraud and/or concealment while litigating with HSBC in or around February 2013, where HSBC used the same and/or similar tactics as the CRA Defendants in support of their motion to dismiss, HSBC argued the statute of limitations defense and stated that the CRA Defendants were responsible for deleting or correcting inaccurate information, so basically they plaid [sic] the blame game." [#84 at ¶ 15]. As discussed above, at deposition, he identified the substance of the statements, the individuals purportedly making those statements, and the timing of those statements. [#155-12 at 5-22]. Drawing all factual inferences in favor of the non-moving party, the fact that Mr. Collins could not "pinpoint" any additional detail [#151 at 9; #156 at 38] or did not have any documentation supporting his fraud claim [#151 at 10] does not justify summary judgment.

Next the court considers whether Experian is entitled to summary judgment because Mr. Collins has failed to present evidence of knowledge of falsity. While the court is troubled by the fact that in the hundreds of pages of argument and supporting documents, neither Trans Union nor Experian argue that the statements, if made, were in fact true, once Experian pointed to an absence of evidence in the record to support the elements of the fraud claim, it was incumbent upon Mr. Collins to come forward with competent evidence to establish every element of his claim. *See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F. Supp. 2d 1106,

1111-12 (D. Colo. 2002).  Mr. Collins fails to do so.  Therefore, summary judgment in favor of Experian on this ground is warranted.

The court now turns to whether there is a genuine issue of material fact regarding Trans Union's argument that Mr. Collins cannot establish that he relied upon any false statement. Generally, whether a person seeking rescission of a contract had a right to rely on the misrepresentation is a question of fact.  *M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380, 1382 (Colo. 1994) (citing *Bassford v. Cook,* 152 Colo. 136, 380 P.2d 907 (1963)).  The court notes Plaintiff's status as a *pro se* litigant and a less sophisticated party to the Settlement Agreements. The pertinent information regarding the statute of limitations in January 2009 and Defendants' authority to remove information from a credit disclosure was likely not equally available to Plaintiff.  *Cf. M.D.C./Wood, Inc.,* 866 P.2d at 1382 ("If the respondents have access to information that was equally available to both parties and would have led to the true facts, the respondents have no right to rely upon the false representation.") (citation omitted); *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1191 (Colo. App. 2008) ("As a general rule, courts will uphold an exculpatory provision in a contract between two established and sophisticated business entities that have negotiated their agreement at arm's length," finding no Colorado cases "upholding or enforcing exculpatory clauses that permit parties to be completely absolved of their intentional, fraudulent, or reckless acts.").  Trans Union argues that Mr. Collins agreed in their Settlement Agreement that "[i]n making this Agreement, Plaintiff has not relied upon any statement or representation pertaining to this matter made by Defendant or its counsel," and that this provision is part of an enforceable contract.  [#156 at 37 (citing #155-1 at ¶ J)].  The court has reviewed the statement in the Trans Union Agreement, as well as Mr. Collins' associated deposition testimony, and concludes that Mr. Collins' statement, in the context of summary

judgment, is better understood as a proposed undisputed fact by Trans Union.  Mr. Collins testified that he didn't agree with the statement [#155-12 at 84:12] and that "I didn't feel I had any other choice but to sign it … And some of the paragraphs in there I either didn't understand what I was signing or I did not …" [*id.* at 84:6-25, 85:1-4].  While the court is sympathetic to Mr. Collins' position, the language of this admission is neither legally complex nor difficult to understand.  It was Mr. Collins' responsibility to read and understand the provisions of the Trans Union Agreement.  *See Flight Concepts Ltd. Partnership v. Boeing Co.*, 38 F.3d 1152, 1157 (10th Cir. 1994).  As the Tenth Circuit held, "a party cannot void a contract by claiming to be ignorant of its contents." *Id.*

Accordingly, I recommend that Defendants' Motions for Summary Judgment as to Plaintiff's fraud claims be granted.

## II.    Fair Credit Reporting Act

Plaintiff claims that Defendants have reported inaccurate information by disseminating false and misleading credit reports to third parties beginning in 2005 or 2006, occurring again in March 2012, and continuing through to the present.  [#84 at ¶ 28].[15]  Plaintiff also claims he

_____

[15] Specifically, Plaintiff claims Defendants violated the FCRA:

> by reporting judgments prior to a final ruling or judgment of the same or higher court, where a trial is still pending or where an appeal can still be had for a de novo review…; reporting inaccurate high balances which exceed the credit limit and lower credit scores; reporting inaccurate account information such as reporting an account as being 'Managed by Financial Counseling Group,' when the account has never been managed by a financial counseling group; reporting accounts as being sold when they were not; reporting accounts twice for the same debt; reporting out of date accounts by re-inserting previously deleted information without notice; re-reporting previously deleted inaccurate information by changing the account number; re-reporting previously deleted inaccurate account information without permanently blocking such information from reappearing in [his] credit file and from being reported in any subsequent credit report; reporting accounts after the statutory time for reporting such accounts have [sic] expired;

disputed the inaccurate information with Defendants each year and up to twelve times a year between 2005 and 2014.  [#84 at ¶ 24].

### A.    Pre-2009 Claims

#### 1.    Settlement Agreements.

Defendants each argue that Plaintiff's claims were resolved by the Settlement Agreements and cannot be re-litigated here.  Paragraph A of the Trans Union Agreement clearly bars any action arising from any action or inaction occurring prior to its execution on May 28, 2009.  [#155-1 at ¶ A]. Similarly, pursuant to the unequivocal language of the Experian Agreement, Mr. Collins released all claims existing as of August 4, 2009, when he executed the Agreement.  [#150-1 at ¶ 1]. Other than his argument that he was fraudulently induced to enter into these Settlement Agreements, which the court rejects, Mr. Collins fails to proffer any argument or evidence to lead this court to conclude that there is a genuine issue of material fact as to any claims for actions arising before 2009.  Therefore, summary judgment is appropriate to such claims.[16]

---

reporting that the issues which caused [him] to dispute the inaccurate information in his credit report has been resolved, when in fact they have not [sic]; re-aging account information by changing the original date the account was closed or charged off.

[#84 at ¶ 12].

[16] Trans Union also argues the doctrine of *res judicata*, also known as claim preclusion, precludes Plaintiff from litigating claims raised by his SAC, except for three.  [#156 at 10 ¶ 26].  The court finds that all claims that could have been raised in the First Action are also precluded by *res judicata.*  The doctrine, however, cannot preclude claims that Mr. Collins did not have a full and fair opportunity to adjudicate in the First Action, *i.e.*, any disputed accounts that arose after the execution of the Settlement Agreement.  *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).  Because the court finds that the plain language of the Settlement Agreements bar any claim, known or unknown, that arose prior to their respective executions, the court does not analyze the application of *res judicata* in detail.

## 2.      Statute of Limitations.

Even assuming that the Settlement Agreements failed to dispose of Plaintiffs' pre-2009 claims, the statute of limitations justifies the grant of summary judgment for both Trans Union and Experian.  Trans Union argues that all but five[17] of Mr. Collins' post-Settlement claims are time-barred.  [#156 at 7].  Experian argues simply that the statute of limitations bars "the bulk of Plaintiff's alleged damages."  [#151 at 17-18].  The FCRA statute of limitations was amended on December 4, 2003, effective March 31, 2004.  *See* P.L. 108–159 § 156; *Grigoryan v. Experian Information Solutions, Inc.*, ---F.Supp.3d ----, 2014 WL 7745883, at * n. 111 (C.D. Cal. 2014). (observing same).  As of March 31, 2004, an action on a CRA's liability under the FCRA may be brought within two years of the date of a plaintiff's discovery of the violation that is the basis for claiming liability, or within five years of the date on which the violation that is the basis for such liability occurs.  15 U.S.C. § 1681p(1)-(2).   The amendment explicitly recognizes that the statute begins to run on discovery.  *See Saindon v. Equifax Info Servs.*, 608 F. Supp. 2d 1212, 1215 (N.D. Cal. 2009) ("The statute clearly states that the clock begins to run when plaintiff 'discovers' the violations.").

*Trans Union*.  Trans Union also argues that Plaintiff's claims regarding all but five of the disputed accounts and public records are time-barred because any possible reporting on those accounts occurred outside of the applicable statute of limitations.  [#156 at 7].   In support of this argument, Trans Union proffers a declaration from Marianne Litwa, a Litigation Support Specialist for Trans Union, meticulously reviewing the details of the disputed accounts, when

---

[17] The five excepted accounts and public records are Arapahoe County Record 2011-cv-002563; Arapahoe County Record 2013-cv-000758; BOA Home Loans account #...7075; HSBC account #...4401; and Greystone Alliance account #...8144.  [#156 at 9 n. 33].

such accounts were disputed, and the actions taken in response to each dispute. [#156-2]. She attested to the following facts, which are taken as undisputed due to Mr. Collins' failure to rebut them:

(1)     Account Receivables Management account #...0086, Professional Recovery Service account #...5902, and Bonded Collect Services have never been reported on Plaintiff's Trans Union credit file; [#156-2 at ¶ 62];

(2)     Wakefield & Associates account #...5735 was removed from Plaintiff's Trans Union file on or about June 1, 2004;

(3)     Allied Interstate account #...2327 was removed from Plaintiff's Trans Union file on or about September 19, 2009, at the request of the furnisher;

(4)     Bank One/Chase account #...0941 was removed from Plaintiff's Trans Union credit file on or about May 1, 2004;

(5)     Amsher Collection Service account #...8508 was removed from Plaintiff's Trans Union credit report on September 5, 2008;[18] [*Id.*]

(6)     Plaintiff has lodged 22 disputes with Trans Union since executing the Trans Union Settlement Agreement in 2009, [#156-2 at ¶ 11].

(7)     Between July 21, 2009 and March 12, 2012, Plaintiff disputed and Trans Union reinvestigated a number of accounts herein at issue. [*Id.* at ¶¶ 12-42].

(8)     Following reinvestigations, Trans Union deleted from Plaintiff's report the following accounts: Alpine Credit Inc. account #...8701, Midland Credit

---

[18] Plaintiff did not identify an Amsher account in either the SAC or his requests for written discovery. Therefore, the court finds that any dispute over the Amsher account is not properly before it.

Management account #....0621, and NCO Financial account #...2350.  [*Id.* at ¶ 13].

(9)     Following reinvestigations, Trans Union verified the following accounts: Applied Bank account #...6614; Bank of America/BAC Home Loans accounts #...7075, #...7091, #...8980, and #...9084; Bank of America Home Loans/Countrywide account #....8993; Household Finance account #...1649; HSBC Bank account #...4401 and account #4494; United Resource Systems account #...57N1; HSBC Auto Finance account #...0494; CCB Credit Services account #...2180; Washington Mutual/Chase account #...6661; National Credit Systems account #...0614; and Arapahoe County Recorder docket #5CV500049.  [*Id.* at ¶¶ 13, 20, 28, 38, 42].

On April 6, 2010, Trans Union deleted HSBC Auto Finance account #...0494 from Plaintiff's credit report.  (Litwa Decl., #156-2 at ¶ 20].  On September 16, 2010, Trans Union deleted Bureau of Collections account #...7939.  [*Id.* at ¶ 26].  On October 5, 2010, Trans Union deleted Colorado Federal Court docket #216858.  [*Id.* at ¶ 26]. On May 2, 2011, Trans Union deleted ACS – Denver Parking account #...0480.[19]  [*Id.* at ¶ 34].  On October 12, 2011, Trans Union informed Plaintiff that it was no longer reporting National Credit Systems account #...3006 and Midland Credit Management account #...4067.  [*Id.* at ¶¶ 39, 40].  In February 2012, Trans Union notified Plaintiff that it was no longer reporting Applied Bank account #...6614 and HSBC Bank account #...4494 and had deleted Household Finance account #...1649 and United Resource Systems account #...57N1.  [*Id.* at ¶ 42].  Plaintiff initiated this instant action on March

---

[19] Plaintiff did not identify ACS – Denver Parking account #...0480 in either the SAC or his requests for written discovery.  Again, the court does not consider any claim associated with ACS – Denver Parking because it is not properly before the court.

12, 2014, and therefore, any actionable claim must have arisen after March 12, 2012. It is undisputed that Mr. Collins had notice of these accounts, and any potential discrepancy with their reporting, because he actively engaged with Trans Union about their reporting. However, Plaintiff ceased disputing Trans Union's credit reporting activity as to these accounts prior to March 12, 2012, and any claim based on those accounts is now time-barred.

*Experian.* Jason Scott, a legal and compliance specialist for Experian, attested that the following six accounts have not appeared on Plaintiff's Experian credit disclosures since July 2009: Amchek Collections; National Credit Systems; NCO Fin/35; Washington Mutual; Bureau of Collection Recovery; and Greystone Alliance. [Scott Decl., #151-10 at ¶ 13]. Plaintiff has produced no evidence to refute this statement; therefore, these six accounts are time-barred.

In addition, Experian argues that the "Computation of Damages" by Plaintiff arose from actions that occurred eight or more years ago, and that he was aware of such damages in 2009 – therefore, making such claims time-barred. [*Id.* at 18]. In support of this argument, Experian points to the deposition testimony of Mr. Collins. [*Id.*] Mr. Collins does not provide any evidence to rebut his testimony that the majority of the damages he is claiming arise due to circumstances occurring prior to 2009, and the court has already determined that summary judgment with respect to the fraud claim should be decided in Experian's favor and any pre-2009 disputes are barred by the Settlement Agreements. The court further finds that any claim based on disputes known to Mr. Collins prior to 2009 are time-barred, and therefore, Experian is entitled to summary judgment as to such claims based on this additional ground.

### B.    Post-2009 Claims

Trans Union and Equifax appear to concede that their Settlement Agreements with Mr. Collins do not bar any claims that Mr. Collins may have that post-date the respective settlement

agreements.  Trans Union argues that Plaintiff's claims fail on their merits because it reported Plaintiff's information accurately, employed reasonable procedures in reinvestigating disputes, Plaintiff cannot show that any inaccuracy was the proximate cause of the damage he claims, and he cannot show that Trans Union acted willfully.  [#156 at 13-22].  Equifax identifies only two post-Settlement credit items, but argues that they were accurately reported.  [#151 at 4, 15-16 n.9].

*Trans Union*.  On May 29, 2012, Plaintiff disputed Bank of America Home Loans/Countrywide account #...7075 and HSBC Bank account #...4401.  [Litwa Decl., #156-2 at ¶ 43].  Following a reinvestigation, Trans Union deleted these two accounts from Plaintiff's Trans Union credit file and notified Plaintiff of such on June 5, 2012.  [*Id.* at ¶ 44].  On December 6, 2013, Plaintiff disputed Arapahoe County District Court docket 2011-cv-002563.  (Litwa Decl., #156-2 at ¶ 50; #155-3 at 16-19].  Following a reinvestigation, Trans Union deleted this item from Plaintiff's report and informed him of such on December 18, 2013.  [*Id.* at ¶ 51].  On April 7, 2014, Plaintiff disputed Arapahoe County District Court docket 2013-cv-000758.  (Litwa Decl., #156-2 at ¶ 57; #155-3 at 157-159].   Following a reinvestigation, Trans Union deleted this item from Plaintiff's report and informed him of such on April 24, 2014.  [*Id.* at ¶ 58].  On September 8, 2014, Plaintiff disputed Greystone Alliance LLC account #...8144.  (Litwa Decl., #156-2 at ¶ 59; #155-3 at 176-178].  Trans Union states that after a reinvestigation, it determined that this account was not reporting on Plaintiff's Trans Union credit file at the time of Plaintiff's dispute, and it removed the account from Plaintiff's Trans Union credit file between September 3 and 4, 2014.  [*Id.* at ¶¶ 60, 62].

Because the statute of limitations has not expired for these five accounts, the court first addresses Trans Union's argument that summary judgment is appropriate because the accounts

are accurate.  A determination that Defendant's credit reporting was accurate negates the need to consider the remaining factors of the negligent infringement analysis.  *See Pinson v. Equifax Credit Info. Servs., Inc.,* 316 Fed. App'x. 744, 751 (10th Cir. 2009) (affirming grant of summary judgment to CRA defendant where plaintiffs "cited no evidence indicating that Experian's credit reports were inaccurate").  *See also Ritchie v. TRW, Inc.*, 953 F.2d 1392, at *2 (10th Cir. Feb. 3, 1992) (Table Opinion) (Plaintiff "must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information.  If he fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation of section [1681e(b)], and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency.") (quoting *Cahlin v. General Motors Acceptance Corporation*, 936 F.2d 1151, 1156-57 (11th Cir. 1991)) ("[C]ourts have assumed that the so-called 'accuracy defense' is a question fit for summary judgment [.]").

As to Arapahoe County District Court docket 2011-cv-002563, Trans Union reported a civil judgment against Plaintiff in the amount of $2,327.  [#156 at 13].  Plaintiff conceded at his deposition that a judgment was entered against him, but asserted the judgment amount was reported incorrectly and that Trans Union should not have reported the judgment at all because an appeal of that judgment was pending.  [Collins Deposition, #155-12 at 58:7-59:9].  Trans Union attached to its Motion for Summary Judgment an Order of Judgment for $2,327.53, entered by District Court Judge Elizabeth A. Weishaupl in docket 2011-cv-002563.  [*See* #156-14 at 21].  Plaintiff testified that in his opinion the judgment should not have been reported while pending on appeal, and that he had briefed the issue in his Response to LexisNexis's Motion to Dismiss.  [Collins Deposition, #155-12 at 58:9-20].  In his Response, Plaintiff cited *Rantz v. Kaufman* [*see* #34 at ¶ 27; #84 at ¶¶ 40-42], in which the Colorado Supreme Court held that "*for*

*the purposes of issue preclusion*, a judgment that is still pending on appeal is not final."  109 P.3d 132, 141 (Colo. 2005) (emphasis added).  Reporting accuracy, rather than issue preclusion, is herein at issue and *Rantz* is not helpful as applied by Plaintiff.[20]

As to Arapahoe County District Court docket 2013-cv-000758, Trans Union reported a civil judgment against Plaintiff in the amount of $26,757 in attorney fees and costs awarded against him.  [#156 at 14].  Plaintiff conceded at his deposition that the court had awarded fees and costs against him, but disputed this debt on the basis that the case had not yet been tried and he did not believe that opposing counsel was entitled to the award.  [Collins Deposition, #155-12 at 93:8-94:15].  Trans Union attached to its Motion for Summary Judgment an Order entered by District Court Judge Justin Mark Hannen granting Defendants' Motion for Attorney Fees in the amount of $25,972.50 and costs in the amount of $785.00.  [#156-15 at 41-48].

Plaintiff testified that Trans Union inaccurately reported a foreclosure associated with BOA Home Loans account #...7075 because Bank of America should not have foreclosed on the mortgage.  [Collins Deposition, #155-12 at 44:3-25].  He did not dispute the fact that Bank of American foreclosed on his mortgage, however [*id.*], and another court in this district found in favor of Bank of America in a lawsuit for wrongful foreclosure of that mortgage initiated by Plaintiff.  [#156-4, at "Collins v. BAC 164-173"].

Plaintiff also testified that Trans Union inaccurately reported the high balance of $1,221 on his HSBC account #...4401.  [Collins Deposition, #155-12 at 45:15-21].  Yet, Trans Union

---

[20] Trans Union cites to *Zahran v. Transunion Corp.*, CIV. 01C1700, 2003 WL 1733561, at *5 (N.D. Ill. Mar. 31, 2003) for support that a civil judgment may be reported while on appeal. However, in light of Judge Arguello's negative treatment of *Zahran* for its reliance on *Henson v. CSC Credit Services,* 29 F.3d 280, 285 (7th Cir. 1994) ("as a matter of law, a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be

argues, HSBC's documents reflected a high unpaid balance of $1,221. [*See* #156-8 at 2-27]. They do, indeed. Finally, Plaintiff disputed Trans Union's reporting of Greystone Alliance LLC account #...8144 on the basis that he did not owe the debt. [#84 at ¶ 59]. Trans Union attached the declaration of Micky L. Colvin, the legal department manager of CFAM Financial Services, LLC ("CFAM"), wherein Mr. Colvin attested that CFAM was the owner of the account and that Trans Union had accurately reported the debt. [#156-5 at ¶¶ 1-6].

I find that Trans Union has presented affirmative evidence that it accurately reported the two public documents and three accounts, and that Plaintiff has failed to adduce any evidence to establish that there is a genuine issue of material fact. Therefore, summary judgment as to Trans Union is appropriate.

*Experian*. Experian identifies two post-2009 judgments that are in dispute, and argues it accurately reported the Arapahoe County civil judgments and generally followed "reasonable procedures to assure maximum possible accuracy of plaintiff's credit report." [#150 at 15 n. 9 ("However, even despite Plaintiff's release of all claims regarding the twenty accounts and two public records…, the FCRA claims based on the reporting of these items fail for the same reasons discussed herein.")]. Kathleen Centanni, the Director of Experian's Regulatory Compliance Department, attested that Experian has established internal quality control reviews in addition to requiring its data provider, LexisNexis to maintain quality control testing and monitoring. [*See* Centanni Decl., ##151-1 at ¶3]. She further explained that Experian relies upon LexisNexis to provide it public record data, and in or around May of 2013 and January 2014, civil judgments from Arapahoe County District Court involving Michael Collins, P.O. Box 460276, Aurora, Colorado were matched to Plaintiff Collins. [*Id.* at ¶¶ 6-10 (attesting as to

inaccurate"), this court finds as more persuasive the fact that Plaintiff has not cited support for

procedures Experian uses to ensure accuracy and quality control as to its compilation of public records)]. As discussed above, Mr. Collins admitted at deposition that the court had awarded fees and costs against him. [Collins Deposition, #155-12 at 93:8-94:15]. A party who does not bear the burden of proof on an issue need only point to the absence of evidence, which then forces the respondent to present sufficient, competent evidence to carry its burden of proof. *See In re Ribozyme*, 209 F. Supp. 2d at 1111-12. In this case, summary judgment in favor of Experian is appropriate as to whether its reporting was accurate because Plaintiff fails to point to any evidence that creates a genuine issue of material fact.

Experian also argues it reasonably conducted a reinvestigation of the Arapahoe County civil judgments following Plaintiff's disputes. [#151 at 4]. Mr. Scott attested that Experian engages in the following procedures when it receives a dispute from a consumer or inquiry into the accuracy of reported information. Experian initiates an investigation of disputed items generally by contacting the sources of the disputed information, explaining the consumer's disputes, and asking for a response concerning the accuracy of the disputed items. [Scott Decl., #151-10 at ¶ 6]. Generally, Experian sends (either manually or electronically) to the creditor an Automated Consumer Dispute Verification ("ACDV") or Consumer Dispute Verification ("CDV"). [*Id.*] The ACDV identifies the consumer, identifies the basis for the consumer's dispute, and asks the creditor to verify or amend the information reported. [*Id.*] The creditor then returns the ACDV to Experian, instructing Experian to either leave the item as it is, to delete the item, or to change it in some specified manner. [*Id.*] Experian acts pursuant to the response and Experian's own procedures, and then sends the consumer a summary reflecting the results of the investigation. [*Id.*] The summary also contains a statement regarding procedures the

---

his position that a judgment cannot be reported pending appeal.

consumer may follow if the consumer disagrees with the results of the investigation, including contacting the furnisher of the disputed information and adding a statement to the consumer's credit file disputing the accuracy or completeness of the disputed account.  [*Id.*]

Mr. Scott further attested that Experian is unable to determine the reasons a consumer disagrees with information that Experian is reporting unless the consumer specifically identifies the item or items in dispute and explains the basis of the dispute.  [Scott Decl., #151-10 at ¶ 7]. Experian does not have access to creditors' records.  [*Id.*]  When the ACDV or CDV (1) is not timely returned; (2) does not verify the reported information; or (3) contains information that causes Experian to determine that the response is unreliable, the disputed information is removed from the consumer's credit file or updated, as requested by the consumer.  [*Id.*]  Plaintiff has not submitted evidence to contradict or rebut Mr. Scott's testimony.

As to the Arapahoe County civil judgments, Mr. Scott attested that on December 9, 2013, Experian received Plaintiff's mail correspondence requesting investigation of a disputed civil judgment in Arapahoe County District Court Case No. 2011-CV-002563.  [Scott Decl., #151-10 at ¶ 8; #150-5].  Experian sent a CDV to LexisNexis, Experian's vendor, to verify the public record.  [*Id.* at ¶ 9].  LexisNexis did not respond to the CDV, and Experian subsequently deleted the public record from Plaintiff's consumer file and notified Plaintiff of such on January 6, 2014. [*Id.*; #150-6].

On April 16, 2014, Experian received Plaintiff's mail correspondence requesting investigation regarding a disputed civil judgment in Arapahoe County District Court Case No. 2013-CV-758.  [Scott Decl., #151-10 at ¶ 10; #150-7].  Experian sent a CDV to LexisNexis to verify the public record.  [*Id.* at ¶ 11].  LexisNexis did not respond to the CDV, and Experian subsequently deleted the public record from Plaintiff's consumer file and notified Plaintiff of

such on May 13, 2014.  [*Id.*; #150-8].  This court need not consider whether Experian's reliance

on LexisNexis constitutes a reasonable procedure in light of the above finding that Defendants

accurately reported the Arapahoe County civil judgments.  *Cf. Wright v. Experian Information

Solutions, Inc.*, No. 12–cv–03268–CMA–CBS, 2014 WL 4056961, at *5-6 (D. Colo. August 14,

2014) (asking, in determining whether CRA defendants engaged in a reasonable procedure by

relying on LexisNexis in reporting a public document, if there is an easily available procedure

"that would greatly improve accuracy of Defendants' reporting of [public documents] such as

Plaintiff's and do so at minimal cost.").

Accordingly, I recommend that summary judgment be entered in favor of Experian as to

the post-2009 disputed accounts.

### C.      Willfulness or Negligence

Having found that, in the face of Defendants' unrebutted and supported factual

statements, Plaintiff fails to establish that there is a genuine issue of material fact with respect to

his post-2009 FCRA claims, the court need not pass on Plaintiff's claims that Defendants

violated sections 1681e(a), 1681e(b), and 1681e(c) by "willfully and negligently" failing to

follow reasonable procedures and "failing to provide a consumer statement of dispute and

notification of consumer dispute in subsequent consumer reports."  [#84 at ¶ 90(o)-(r)].   The

court respectfully recommends that summary judgment be granted in favor of Defendants on any

claims based on alleged willfulness or negligence, regardless of the statutory basis.

### III.     Colorado Consumer Protection Act

Plaintiff claims that Defendants violated the CCPA by knowingly making false

representations as to property and certifications of debt as to him, by failing to disclose "material

information concerning its reporting of false, misleading and inaccurate information to third

parties," and by intending to induce him and others "to enter into a transaction regarding their credit reporting policies." [#84 at ¶ 161]. Trans Union responds that the CCPA claim is preempted by the FCRA. Experian does not address the CCPA in its Motion.

The CCPA was "enacted to regulate commercial activities and practices which, 'because of their nature, may prove injurious, offensive, or dangerous to the public.'" *Rhino Linings USA, Inc.*, 62 P.3d at 146 (quoting *People ex rel. Dunbar v. Gym of America, Inc.,* 177 Colo. 97, 112 (1972)). To the extent the CCPA claim is premised on Plaintiff's FCRA claims, it is preempted as outlined by section 1681t. 15 U.S.C. § 1681t(b)(1)(F); *Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997, 1016 (D. Colo. 2012) (finding defendant's failure to report the loans as disputed was barred as arising from a state statute and thus falling within the boundaries of preemption as defined by the FCRA). Furthermore, there is no evidence in the record to support the allegation that Defendants induced Plaintiff and third parties to enter into a credit reporting transaction with them. Therefore, the court respectfully recommends that summary judgment be granted in favor of Defendants on Plaintiff's CCPA claims.

## CONCLUSION

For the foregoing reasons, this court respectfully RECOMMENDS that:

(1)    Defendant Trans Union LLC's Motion for Summary Judgment and Brief in Support [#156] be GRANTED;

(2)    Judgment in favor of Defendant Trans Union LLC and against Plaintiff Michael A. Collins be ENTERED;

(3)    Defendant Experian Information Solutions, Inc.'s Motion for Summary Judgment [#150 (restricted), #151 (unrestricted)] be GRANTED;

(4)    Judgment in favor of Defendant Experian Information Solutions, Inc. and against Plaintiff Michael A. Collins be ENTERED; and

(5)     Each party bears its own attorney's fees and costs.[21]


DATED:  June 10, 2015                         BY THE COURT:

                                              s/Nina Y. Wang
                                              United States Magistrate Judge

---

[21] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).