IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-00742-RBJ-BNB

MICHAEL A. COLLINS,

      Plaintiff,

v.

TRANS UNION, LLC,
EXPERIAN INFORMATION SOLUTIONS, INC.,
EQUIFAX INFORMATION SERVICES LLC, and
LEXISNEXIS RISK DATA RETRIEVAL SERVICES LLC, individually,

      Defendants.

---

## ORDER

---

      This case is once again before the Court, this time on defendant Trans Union, L.L.C.'s motions for costs and attorney's fees and two motions by plaintiff Michael A.  Collins relating to his appeal.  The Court grants Trans Union's motions but awards less than requested.  The Court grants plaintiff's motions.

## BACKGROUND

      The pertinent facts and case history were largely provided in my order of August 3, 2015 granting motions for summary judgment filed by defendants Trans Union and Experian Information Solutions, Inc.  Briefly, Mr. Collins, representing himself *pro se*, sued Trans Union, Experian and others, claiming that they had reported false information about his credit history from 2005 through the present time.  However, in 2009 Mr. Collins had filed a suit against Trans Union, Experian and others essentially raising the same claims against them that he reasserted in the present case.  Both Trans Union and Experian settled the 2009 case, making monetary

payments to Mr. Collins in exchange for very complete releases of his claims.  Undeterred, Mr.

Collins sued them again, this time claiming that he was fraudulently induced to enter into those

settlements.  He asserted claims against Trans Union and Experian for (1) violation of the Fair

Credit Reporting Act, 15 U.S.C. §§ 1681-1681x; (2) negligent misrepresentation; (3) false

representation; (4) fraudulent misrepresentation; (5) fraud in the inducement; (6) fraudulent

concealment; and (12) violation of the Colorado Consumer Protection Act (hereinafter "CCPA"),

C.R.S. §§ 6-1-101-1121.

Ultimately both Trans Union and Experian filed motions for summary judgment, arguing,

among other things, that the claims were barred by the terms of the previous settlements.  ECF

Nos. 151 and 156.  The Court referred the summary judgment motions to United States

Magistrate Judge Nina Y. Wang who recommended that both motions be granted.  ECF No. 177.

Mr. Collins objected, but on my de novo review I agreed with Judge Wang and granted summary

judgment in favor of both defendants.  ECF No. 229.

Like Judge Wang, I agreed that the settlement agreements executed by Mr. Collins on

May 28, 2009 (Trans Union) and August 4, 2009 (Experian) fully released his claims arising

from conduct occurring up to that time.  Among other things, Judge Wang and I agreed that Mr.

Collins' representations in the settlement agreements that he had not relied upon any statements

or representations by the defendants or their counsel were fatal to his present attempt to disregard

the settlements, and that there was no genuine dispute of material fact concerning the claim that

Mr. Collins was fraudulently induced into signing them.  *Id.* at 4-7.

Mr. Collins also asserted that Trans Union and Experian had violated the Fair Credit

Reporting Act (hereinafter "FCRA") on a few occasions after the 2009 settlements.  Judge Wang

and I both examined the claimed violations, four involving Trans Union and two involving

Experian.  We both found that the two defendants had presented affirmative evidence

establishing the accuracy of the challenged reports; that Mr. Collins had presented no contrary

evidence; and that there was no triable issue as to them.  *Id.* at 7-8.

In addition I dismissed Mr. Collins' common law negligence and fraud claims,

concluding that they were simply alternative legal theories based on the same conduct as the

FCRA claims.  *Id.* at 8-9.  Finally, I dismissed his claim asserted under the CCPA.  Judge Wang

had listed several reasons for dismissing that claim.  I addressed only one.  Mr. Collins did not

allege that the defendants had engaged in practices that impacted anyone other than himself.

Because he completely ignored the public impact element of a CCPA claim, the claim had no

merit.  *Id.* at 9-10.

In addition to dismissing the claims against Trans Union and Experian with prejudice, I

awarded costs to them as prevailing parties pursuant to Fed. R. Civ. P. 54(d)(1) and

D.C.COLO.LCivR 54.1.  Experian submitted a bill of costs, and costs were ultimately taxed by

the Clerk's Office in the amount of $1,839.45.  ECF No. 251.  Trans Union, however, filed the

two motions now pending.  First, it moved for an award of costs in the amount of $2,065.53.

ECF No. 232.  Second, it moved for an award of attorney's fees in the amount of $70,559.90.

The Court conducted an evidentiary hearing on the motions on November 18, 2015.

**ADDITIONAL FACTS PERTINENT TO THE ATTORNEY'S FEES MOTION**

Trans Union reported that it had incurred attorney's fees in this case of approximately

$130,000.  However, recognizing that that the billings were "high," Trans Union elected not to

seek an award of fees incurred after June 29, 2015.  That excluded, among other things, hours

recorded for responding to various other motions filed by Mr. Collins, responding to his

objections to the magistrate judge's recommendations, the preparation of the pending motions,

and the preparation for and presentation at the evidentiary hearing on the motions.  A document entitled "Summary of Relevant Time Entries," which identifies the time for which Trans Union is seeking an award was admitted as hearing Exhibit I.  Because the same information was also filed as an exhibit to the motion, namely ECF No. 233-3, I will refer to the summary by the ECF number in this order.

The hearing focused largely on Mr. Collins' extensive litigation history.  Hearing exhibit B includes pleadings from approximately 27 cases that Mr. Collins filed *pro se,* mostly but not all in the Eighteenth Judicial District of Colorado (the Arapahoe County District Court).[1]  Those cases were filed between 2008 and 2015, and it is evident from the pleadings in those cases that Mr. Collins' history of filing similar cases extends back well before 2008.  These cases involved the same types of claims as were asserted in the present case.  More troubling, however, is that on several occasions Mr. Collins has refiled claims in a new lawsuit after the claims were previously adjudicated or settled, just as he did in the present case:

- On December 12, 2008 Judge Rafferty in the Arapahoe County District Court dismissed a breach of fiduciary duty claim filed by Mr. Collins against Washington Mutual Bank on grounds that the same claim, characterized as a negligence claim, had been dismissed on summary judgment in a previous suit and was therefore barred by the doctrine of claim preclusion.  *Michael A. Collins v. Long Beach Mortgage Co. dba Washington Mutual Bank,* No. 08CV1033, slip. op. at 3-4, found in defendant's hearing exhibit B at B-1.

- On December 19, 2008 Judge Spear in the Arapahoe County District Court dismissed Mr. Collins' against HSBC Auto Finance on grounds that the claims were settled in a

---

[1] The exhibit identifies 30 cases, but one involved a different Michael Collins, another was simply a mandate issued by the Colorado Court of Appeals, and a third was an appellate decision in one of the other included cases.  *See* exhibits B-30, B-5 and B-21.

previous agreement and were therefore barred by claim preclusion.  *Michael v. Household Finance Corporation,* No. 08cv1503, slip op. at 13, found in hearing ex. B-2.

- On January 10, 2010 Judge Spencer in the Arapahoe County District Court dismissed Mr. Collins' efforts to re-litigate claims against Long Beach Mortgage Company that had previously been dismissed by Judge Wheeler in Case No. 07cv1377.  *Michael A. Collins v. Long Beach Mortgage Company,* No. 09cv1554.  The court's order was based on claim preclusion.  Slip op. at 1-2, found in hearing exhibit B-8.

- On April 22, 2012 Judge Wheeler in the Arapahoe County District Court dismissed Case No. 11CV2567, *Michael A. Collins v. Alpine Credit,* with prejudice.  Slip op. at 3-4, found in defendant's hearing exhibit B-13.  The court found that Mr. Collins' claims were precluded under the doctrine of claim preclusion because they arose from the same underlying debt, were asserted against the same defendant, and either were or could have been fully adjudicated in a 2009 case (where the court had granted summary judgment against Mr. Collins).  *Id.*

- On October 30, 2012 Magistrate Judge Tafoya in the United States District Court for the District of Colorado recommended that summary judgment be granted dismissing Mr. Collins' claims in *Michael A. Collins v. BAC Home Loans Servicing, LP,* No. 12cv375, removed from the Arapahoe County District Court.  The recommendation was adopted by the district court, and the final judgment dismissing the case is found in hearing exhibit B-20.  The recommendation and order adopting it are not included in B-20, but I take judicial notice of the files of this court.  Judge Tafoya recommended, and the district court agreed, that several of Mr. Collins' claims (including a CCPA claim) were barred by the doctrine of res judicata, having been previously litigated in a case brought in the

Arapahoe County District Court and removed to this court.  ECF No. 53 in 12cv375 at 20-27.

- On March 8, 2013 Judge Horton in the Arapahoe County District Court dismissed Case No. 11CV2564, *Michael A. Collins v. United Resource Systems, Inc.*  Slip op. at 3-5, found in hearing exhibit B-16.  The court found that claim preclusion prevented Mr. Collins from relitigating claims he had brought (and that were dismissed) in a 2009 case.  *Id.*  The district court's order and judgment were affirmed on appeal.

- On January 8, 2013 Judge Pratt in the Arapahoe County District Court dismissed Case No. 12CV237, *Michael A. Collins v. HSBC Auto Finance, Inc.* with prejudice.  Slip op. at 4-5, found in hearing exhibit B-25.  The court found, among other things, that claim preclusion prevented Mr. Collins from relitigating claims that he had brought and settled in a 2005 case.  The Court also noted that Mr. Collins had tried once before to relitigate the same claims in a 2008 case, only to have them dismissed under the doctrine of claim preclusion.  *Id.*

- On October 10, 2013 Judge Hannen in the Arapahoe County District Court dismissed Case No. 13CV758, *Michael A. Collins v. Smoky Hill Road Apartments,* with prejudice.  This was a collections dispute arising out of a lease agreement.  The court found that either collateral estoppel or issue preclusion barred nine of the 20 claims Mr. Collins asserted because they had previously been litigated in a 2011 case.  Ex. B.29.  The other 11 claims were dismissed on other grounds.

In addition, the records of these cases indicate that in at least nine of his previous lawsuits Mr. Collins has asserted violations of the CCPA.  *See* hearing exhibits B-3, B-19, B-20, B-22, B-

23, B-25, B-27, B-28 and B-29.  Significantly, in three of those, all filed before the present

action, the court noted that Mr. Collins had not addressed or satisfied the public impact element.

- In *Michael Collins v. HSBC Auto Finance,* No. 12cv237 (Jan. 8, 2013), the court granted
  summary judgment dismissing the CCPA claim on grounds, among others, that he had
  provided no evidence to any public impact of the alleged deceptive trade practices.  Slip
  op. at 6-7, found in hearing exhibit 25.

- In *Michael A. Collins v. Corum Real Estate Group, Inc.,* No. 11cv2566 (Jan. 30, 2013),
  the court granted summary judgment dismissing the CCPA claim for failure to present
  any evidence of a public impact.  Slip op. at 2-3, found in hearing exhibit B-28.

- In *Michael A. Collins v. Smokey Hills Road Apartments,* No. 13cv758 (Oct. 10, 2013),
  the court granted summary judgment dismissed the CCPA claim on grounds that it was
  precluded by the court's previous dismissal of the same claim in 11cv2566 on the public
  impact requirement.  Slip Op. at 4-5, found in hearing exhibit B-29.

## ANALYSIS

### I.  ATTORNEY'S FEES.

#### A.  <u>Frivolous Litigation</u>.

To begin, if I were a state court judge applying C.R.S. § 13-17-102, I would find that the

claims Mr. Collins asserted in the present case were "substantially frivolous" (because he could

present no rational argument based on the evidence or the law in support of them) and that they

were also "substantially groundless" (because they were not supported by any credible

evidence).  Although Mr. Collins has represented himself in this case, his history demonstrates

that he is an experienced civil litigator.  Further, regardless of his litigation experience, he knew

or certainly should have known when he filed this case that he had already settled and released

Trans Union with respect to the credit reports up to 2009.  He also knew or should have known that the four post-2009 credit reports by Trans Union that he added to the present case were in fact accurate.

Mr. Collins also knew or should have known that his repeated filing of cases was causing litigation opponents to incur substantial litigation costs and fees.  In the present case alone there are, to date, 260 entries in the electronic file.  He might not have anticipated that Trans Union would incur an astonishing $130,000 in attorney's fees in this case.  I am probably more incredulous even than Mr. Collins in the face of that number.  But there is no doubt that Trans Union, Experian and others have incurred considerable litigation expense as a result of his numerous cases.

I do not underestimate the damage that can be done by sloppy or unlawful practices by debt collectors and credit reporting agencies.  But there is little evidence in the record confirming the merits of Mr. Collins' suits.  To be sure, he has obtained some settlements, possibly resulting from actual wrongdoing in some instances.  However, not one of his claims has been adjudicated to be meritorious to my knowledge, and there is an extensive record of dismissals of his claims and cases.  It seems to me that he has made suing these entities something of an avocation.

The Colorado attorney's fee statute does not apply here.  To my knowledge there is no federal counterpart that permits the award of attorney's fees solely upon a finding that a claim or defense is substantially groundless or frivolous.  Federal law requires an element of bad faith or vexatiousness.

**B. <u>Bad Faith.</u>**

1. <u>The Bad Faith Exception to the "American Rule."</u>

If a court finds that a party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons," it can award attorney's fees to the successful party.  *See Kornfeld v. Kornfeld,* 393 F. App'x 575, 578 (10th Cir. 2010) (unpublished) (quoting *Chamber v. NASCO, Inc.,* 501 U.S. 32, 45 (1991), which in turn quoted *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U..S. 240, 258-59 (1975)).  The Tenth Circuit applies this exception stringently in order to avoid deterring individuals with colorable claims from seeking relief in federal court.

Thus, for example, "[a]n award of attorney's fees under the bad faith exception to the American Rule 'is punitive, and the penalty can be imposed 'only in exceptional cases and for dominating reasons of justice.'"  *Cornwall v. Robinson,* 654 F.2d 685, 687 (10th Cir. 1981) (quoting *United States v. Standard Oil Co.,* 603 F. 2d 100, 103 (9th Cir. 1979)).  "[T]here must be clear evidence that the challenged claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons."  *Kornfeld,* 393 F. App'x at 579–80.  The trial court must, at minimum, make a finding of "bad intent or improper motive."  *Mountain West Mines, Inc. v. Cleveland–Cliffs Iron Co.,* 470 F.3d 947, 953–54 (10th Cir.2006) (citing *Sterling Energy, Ltd. v. Friendly Nat'l Bank,* 744 F.2d 1433, 1435 (10th Cir.1984)).  A trial judge must identify the factual basis for the conclusion of bad faith.  *Sterling,* 744 F.2d at 1437.  In order to find "bad intent" or "improper motive," the trial court must make a finding of subjective wrongdoing.  *Mountain West Mines*, 470 F.3d at 954.

2. <u>Fair Credit Reporting Act's Attorney's Fees Provisions.</u>

The FCRA has two attorney's fees provisions—one for negligent noncompliance and one for willful noncompliance—but they are substantially the same.  Either provision requires the party moving for fees to demonstrate that "an unsuccessful pleading, motion, or other paper" was filed "in bad faith or for purposes of harassment."  *Eller v. Trans Union LLC,* No. 09-cv-40-WJM-KMT, 2013 WL 1507770, at *2 (D. Colo. April 12, 2013).

Section 1681o(b) applies to attorney's fees that may be assessed in connection with liability for negligent noncompliance, and it provides:  "On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing part attorney's fees in relation to the work expended in responding to the pleading, motion, or other paper."  Section 1681n(c) applies to attorney's fees that may be assessed in connection with liability for willful noncompliance, and its language is nearly identical: "Upon a finding by the court than an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper."

In interpreting bad faith or harassment under the FCRA, courts look to the "plaintiff's mental state at the time of filing."  *Eller,* 2013 WL 1507770 at *2.  And, the party seeking the fees "bears the burden to show entitlement to such fees." *Id.*  The Tenth Circuit requires sufficient documentation in order for a court to determine "whether the requested fees are

reasonable." *Cousineau v. Unifund CCR Partners,* No. 10-cv-3109-CMA-KLM, 2012 WL 3135687, at *6 (D. Colo. July 31, 2012).

   **C.  Colorado Consumer Protection Act's Attorney's Fees Provision**.

   One of the state claims brought by Mr. Collins was the alleged violation of the CCPA. This statute has an attorney's fee provision: "Any person who brings an action under this article that is found by the court to be groundless *and* in bad faith *or* for the purpose of harassment be liable to the defendant for the costs of the action together with reasonable attorney fees as determined by the court." C.R.S. § 6-1-113(3) (emphasis added).

   Thus, this statute requires that the action be brought either in bad faith or for the purpose of harassment.  However, the Colorado Court of Appeals awarded attorney's fees under the statute when the plaintiff "did not allege, nor is there any showing in any factual material submitted by the parties that the alleged conduct of [defendant] significantly impacts the public as an actual or potential consumer." *Wheeler v. T.L. Roofing, Inc.,* 4 P.3d 499, 506 (Colo.App.2003).  Moreover, a California appellate court has held that an attorney's fee provision in a state consumer protection statute is not preempted by the FCRA where it did not "conflict with the federal FCRA and was not an obstacle to the FCRA's purpose and objectives." *Gomon v. TRW, Inc.,* 28 Cal. App. 4th 1161, 34 Cal. Rptr. 2d 256 (4th Dist. 1994).

   **C.  Vexatious Multiplication of Proceedings.**

   Any lawyer or other person admitted to conduct cases in United States courts may be assessed attorney's fees and costs reasonably incurred because of conduct that "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.  Federal circuit and district courts are divided as to whether this statute applies to a pro se litigant.  *See Guarneros v. Deutsche Bank Trust Co. Americas,* No. , 2009 WL 1965491, at *6 (D. Colo. July 7, 2009)

11

(citing cases).  *See also Ayala v. Holmes,* 29 F. App'x 548, 550-51 (10th Cir. 2002)

(unpublished) (declining to take a position unnecessarily).  At least as applied to attorneys the

statute does not require a finding that the attorney acted in bad faith.  *Hamilton v. Boise Cascade Express,* 519 F.3d 1197, 1202 (10th Cir. 2008).  But it does require a finding that the

multiplication of the proceedings be "vexatious," meaning "without reasonable or probable cause

or excuse; harassing; annoying."  *United States v. Lain,* 640 F.3d 1134, 1137, (10th Cir. 2011)

(quoting Black's Law Dictionary 1596 (8th ed. 2004)).

### D.  Conclusions Regarding Attorney's Fees –Entitlement.

Based upon my review of the pleadings included in defendant's hearing exhibit B, it

appears that in the cases that have concluded with dismissals on motions to dismiss or for

summary judgment, the defendants rarely have sought an attorney's fee sanction.  In one case the

defendant did so and was granted $41,550 in attorney's fees.  However, in that instance,  the

basis was Mr. Collins' failure to respond to the motion for an award of fees.  *Michael A. Collins v. CFAM Financial Services, LLC,* No. 10CV1307, slip op. at 1 (Nov. 7, 2012), found in hearing

exhibit B-26.  I am not aware of a previous decision by a state or federal court regarding whether

an attorney's fee award should be made against Mr. Collins based upon bad faith or vexatious

litigation.  Mr. Collins' good fortune in that regard ends here.

Mr. Collins is a pro se litigant, and federal courts must interpret pro se litigants'

pleadings liberally.  *See, e.g., Haines v. Kerner,* 404 U.S. 519 (1972).  During my review of

exhibit B and the pleadings in the present case I observed that Mr. Collins frequently invokes

this protection, citing *Haines* and other similar cases.  But there is a difference between

permitting him a liberal interpretation of his pleadings and permitting him continually to abuse

the litigation process.

Two things push this case across the line from frivolous and groundless into bad faith and vexatious. First, as indicated, this is not the first time that he has either settled or unsuccessfully litigated a claim, only to file the same claim again in a new suit. On at least eight previous occasions, he has done this, only to have his second bite at the apple dismissed by a court under the doctrines of claim preclusion or res judicata. Yet, he did the same thing again in this case. Therefore, while I might ordinarily accept a pro se litigant's refiling of a settled claim on the argument that he was hoodwinked into entering into the settlement as falling short of bad faith or vexatious conduct, when one learns that on multiple occasions in the past Mr. Collins had been told by various courts that he cannot re-file claims that have previously been litigated, but he continues to do it, it becomes such a gross abuse of the system that it cannot be excused. I infer that, despite the lessons he should have learned from numerous courts, he filed the present case against Trans Union with the bad intent or improper motive of trying to obtain additional compensation for claims on which he had already obtained a monetary settlement.

Second, and perhaps even more troubling, is the fact that he continues to assert CCPA claims without any allegation or showing of significant public impact despite the fact that on at least three previous occasions he has been told and reminded by courts that he cannot do that. The CCPA provides important protection to consumers against deceptive trade practices. However, it is subject to abuse, perhaps in many cases motivated by its provisions regarding treble damages and attorney's fees. I have no problem with a pro se litigant's invoking the Act and thinking, wrongly, that it covers deceptive practices that impact only that individual. It's a complex statute, and many lawyers have made the same mistake. But, continuing to invoke coverage after one is clearly and repeatedly informed as to what the statute requires, without a factual basis, evidences bad faith and vexatious multiplication of proceedings in my view.

Accordingly, I conclude that Trans Union is entitled to an award of reasonable attorney's fees.

### E.  <u>Conclusions Regarding Attorney's Fees – Amount.</u>

The determination of a reasonable attorney's fee begins with calculation of the "lodestar amount," i.e., the product of hours "reasonably expended" times a "reasonable hourly rate." *Robinson v. City of Edmund,* 160 F.3d 1275, 1281 (10th Cir. 1998).

The Court finds that the rates charged by Trans Union's lawyers in this case were reasonable.  The majority of the attorney time was billed by an associate attorney at the rate of $187 per hour.  ECF No. 233-3.  Some time was billed for partner supervision at the rate of $196 per hour.  *Id.*  Paralegal and case clerk time was billed at $175 per hour.  *Id.*

Alyson V. Blatney, the associate attorney who performed most of the work, has been licensed to practice law in Texas since 2008.  ECF No 233-1 at ¶2.  During the hearing Ms. Blatney testified that her firm handles FCRA litigation for Trans Union in the southern half of the United States, and that she personally has substantial experience in such cases.  She further testified that the rates charged have been discounted from the firm's regular hourly rates due to the volume of work provided by the client.  She produced a Colorado Bar Association survey indicating that the median hourly billing rate for Colorado lawyers with six to 10 years of experience in 2011 was $200 per hour, and for lawyers handling collection work it was also $200 per hour.  Ex. J at 15, 16.  One can debate the application of such survey numbers to the specifics of a given case, but here it doesn't matter.  I have no difficulty finding that the rates charged were reasonable.  Mr. Collins did not argue otherwise.

The more significant issue in this case is the reasonableness of the number of hours billed.  Defense counsel has already recognized that it would be unreasonable to expect Mr.

Collins to pay all the fees billed, apparently in the range of $130,000.  Acknowledging that this amount is "high," they cut their request to $70,559.90.  However, rather than going through all the bills line by line and trimming excessive time, counsel established an arbitrary cutoff date that both included excessive time recorded before the date and excluded time that plainly was necessarily incurred after the date.  This process did cut the fee request to approximately 55% of the amount billed to the client.  However, I still cannot find that the result was reasonable.

In assessing reasonableness courts often consider the 12 guidelines originally listed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974).  Applying those factors, I find and conclude as follows:

1. The time and labor required.  Realistically, this was not a difficult case to defend.  Mr. Collins' claims concerning conduct occurring in or before 2009 had been settled and released in the previous case.  The language of the settlement agreement was broad and clear, as both Magistrate Judge Wang and this Court found.  It should not have taken a great deal of attorney time to present that defense.

Mr. Collins also complained about four items in his credit file that arose after the 2009 settlement.  Trans Union reasonably could be expected to investigate those items to be sure they were appropriately included in the file – even though it presumably had already made such an investigation before the four items went into his file.  But two of them were simply reports of court judgments against Mr. Collins that were relatively easily confirmed by copies of the court records.  One was a mortgage foreclosure that had already been upheld against a wrongful foreclosure suit by Mr. Collins.  The fourth was a report of a balance owed by Mr. Collins on an HSBC account that was readily confirmed by documents.

I am mindful that the Court may not simply "eyeball the fee request and cut it down by an arbitrary percentage." *Robinson,* 160 F.3d at 1281 (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No 205,* 90 F.3d 1307, 1314 (7th Cir. 1996)).  Accordingly, I have reviewed counsel's summary on a line by line basis, applying my experience as a civil litigation lawyer and trial judge in the absence of any other independent evidence.  In doing so I included time for such necessary and reasonable work as reviewing the various versions of Mr. Collins' complaints, obtaining the dismissal of a motion for a temporary restraining order, doing basic research to obtain the previous settlement agreement and information regarding the four post-2009 claims, preparation of answers to the complaints, compliance with Rule 26 requirements, response to plaintiff's discovery requests, consideration of possible settlement and attendance at a settlement mediation, preparation of correspondence requesting that Mr. Collins voluntarily dismiss the case, the summary judgment motion, and review of Judge Wang's recommendation concerning the summary judgment motion.

On the other hand, I reduced or omitted time that I could not find was necessarily or reasonably incurred in view of what was truly required to defend the case successfully.  This includes, for example, much of the time invested in propounding discovery.  It also includes time on appropriate items that appeared to be excessive.  For example, I attempted to determine how much time was billed on preparation of the summary judgment motion.  This was difficult, because the timekeepers recorded time in blocks that did not indicate the specific amount of time incurred on each of sometimes several different tasks included in the block.  Conservatively, however, I find that approximately $18,000 (7.0 hours of partner time at $196 per hour; 59.2 hours of associate time at $187 per hour; and 30.5 hours of paralegal time at $175 per hour) was spent on the summary judgment motion.

I find that all 14.7 hours of partner time included within the 382.4 hours identified in the Summary, ECF No. 233-3, were necessarily and reasonably recorded and billed.  The time entries show that the time was for supervision.  If I have a criticism in this area it would be that insufficient partner-level supervision was provided.  At $196 per hour, this totals $2,881.20.

I find that approximately 94 hours of the associate time included in ECF No. 233-3 was necessarily and reasonably recorded and billed.  This includes 30 hours on the motion for summary judgment.  At $187 per hour, this totals $17,578. 00.

I find that approximately 39.3 hours of the paralegal time included in ECF No. 233-3 was necessarily and reasonably billed.  This includes all of the hours that I attributed to the motion for summary judgment.  At $175 per hour, this totals $6,877.50.

In addition I find that 14.9 hours included in ECF No. 233-3 and recorded by case clerk Richard Charlton should be included, as they appear to be directly related to the assembly of the records of Mr. Collins' previous litigation (hearing exhibit B) which was used by the Court in the analysis of the attorney's fee request.  At $175 per hour, this amounts to $2,607.50.  Finally, although not included in ECF No. 233-3, I include 20 additional hours of associate time in order to roughly and conservatively account for the associate time necessarily and reasonably incurred by associate attorney Blatney to prepare a response to Mr. Collins' objection to Judge Wang's recommendation and to participate in the attorney's fee hearing including preparation and travel.  That adds another $3,720.00 at $186 per hour.

The sum of these numbers is $33,664.20.  I conclude that this number, being the product of what I have found to be reasonable and necessary hours times reasonable rates, is the "lodestar."  This number has the appearance of more precision than it perhaps deserves, but I find that it will serve as a reasonable ballpark in the absence of anything better in the record.  I

note also that Mr. Collins presented essentially nothing relevant or useful regarding the amounts during the hearing, so there was no help to garnered there.

2. <u>The novelty and difficulty of the questions</u>.  The issues were neither novel nor difficult.  It was not complex litigation, and the fact of the previous settlement made it even less so.  However, in substance I took this factor into account in reducing the lodestar to approximately 48% of the amount requested (and approximately 25% of the total amount apparently recorded) by the law firm in this case.

3. <u>The skill required to perform the services</u>.  I have no reason to doubt the "skill" of the lawyers and their assistants, as such.  The issue here is more one of judgment than skill.  It is not reasonable, at least for purposes of an attorney's fee award, to treat every case like "Marbury v. Madison."  Some defenses of FCRA cases require less, even substantially less, time than others.  This, in my judgment, was such a case.  But, again, I took this factor into account in determining the lodestar.

4. <u>The preclusion of other employment due to acceptance of the case</u>.  There is no evidence that the work on this case prevented the law firm from accepting other work.

5. <u>The customary fee</u>.  There was some, albeit minimal, evidence of the customary hourly rate charged by lawyers of six to ten years' experience in this community, and by lawyers in this community who engage generally in "collections" work.  There was no evidence directly bearing on the *fee* customarily charged for defending FCRA cases in this community.  For example, there was no testimony by an attorney other than the involved attorney, and there was no testimony from any client that regularly defends similar cases.  I cannot assign any particular weight to this factor.

6. <u>Whether the fee is fixed or contingent</u>.  Not applicable here.

7. <u>Time limitations imposed by the client</u>.  Not applicable here.

8. <u>The amount involved and the results obtained</u>.  The result obtained was favorable – dismissal of the case and now an award of attorney's fees.  As for the amount at stake, however, no evidence was presented.  To my knowledge Mr. Collins has not indicated in pleadings in the file what he was seeking by way of monetary relief.  More importantly, Trans Union presented no evidence as to its evaluation of its exposure.  It did, however, characterize the case as meritless and frivolous.  There is no mathematical formula that would account for the "amount involved" factor.  Therefore, applying "the judge's nose," I adjust the lodestar downward 25% to reflect my judgment that relatively little was realistically at stake in this case.  This reduces the amount to $25,248.15.

9. <u>The experience, reputation, and ability of the attorneys</u>.  The law firm and Ms. Blatney in particular have substantial experience representing defendants in similar cases.  No evidence was presented as to their reputation, but I infer from the fact that Trans Union gives the firm substantial business that the firm is considered to be competent in this field.

10. <u>The undesirability of the case</u>.  Not applicable here.

11. <u>The nature and length of the professional relationship</u>.  The nature of the relationship between Trans Union and this law firm is reflected in the discount the firm provides on its hourly rates.  Mr. Collins is receiving the benefit of that discount.  I do not find that the professional relationship bears materially on the reasonableness of the hours billed.

12. <u>Awards in similar cases</u>.  I noted earlier that in one of the state court cases the judge awarded the defendant a fee of $41,550 against Mr. Collins.  This followed, so far as the record shows, Mr. Collins' failure to respond to the motion for an award of fees.  No evidence was presented as to awards of attorney's fees in similar cases resulting from application of the

*Johnson* factors or other factors considered by courts determining the reasonable amount to be awarded.

Although not listed as one of the *Johnson* factors, I have also considered that Mr. Collins might be unable to respond to a fee award in the range of $25,000. Inability to pay is not relevant to an award of fees but may be considered in determining the reasonable amount of the award. *Cf. Roth v. Green,* 466 F.3d 1179, 1194 (10th Cir. 2006) (attorney's fees under 42 U.S.C. § 1988)). No evidence was presented during the hearing as to Mr. Collins' current assets or income, but in his unsuccessful motion for leave to appeal this Court's merits judgment in forma pauperis under 28 U.S.C. § 1915, he provided at least some evidence suggesting that he has limited resources at this time. The very nature of these cases that he brings might suggest that his resources have in the past been limited. However, I decline to adjust the fee award on that basis in this case. Whether he ultimately pays this fee award or not, I want him to understand that when he files and maintains a frivolous lawsuit vexatiously or in bad faith, there are consequences.

The bottom line is that I find that a reasonable and necessary amount of fees to be awarded to Trans Union against Mr. Collins is $25,248.15.

## II.  COSTS.

Trans Union filed a motion for costs [ECF No. 232] supported by its bill of costs [ECF No. 232-1] and other documents. The Court now awards the following costs:

| | |
|---|---|
| Fees and Disbursements for Printing (undisputed) | 61.20 |
| Fees for Exemplification and Copies (undisputed) | 219.38 |
| Costs Incident to Taking of Depositions (disputed) | 1,324.60 |
| Other Costs (undisputed) | 32.40 |

<u>TOTAL</u>                                          <u>$1,637.58</u>

Regarding the disputed item, I believe that it was arguably unnecessary to engage in much affirmative discovery in this case, and I therefore wrote down time recorded by Trans Union's counsel for such discovery.  However, the records indicate that both defendants took the deposition of Mr. Collins, and under the circumstances, I cannot say that it was so unreasonable for Trans Union to have participated as to deny it reimbursement of its out of pocket costs. Experian was billed $1,324.60 by the reporter for the deposition, and Mr. Collins was taxed that amount by the Clerk's Office.  Trans Union for some reason was billed $1,752.55.  The reporter's bill to Trans Union was not itemized (its bill to Experian was).  Without knowing why Trans Union was billed a little more, I am awarding the same amount to Trans Union that was taxed in favor of Experian.

## III.  PLAINTIFF'S NOTICE OF APPEAL.

Final judgment on the merits was entered on August 3, 2015.  ECF No. 230.  On August 31, 2015 Mr. Collins filed a timely motion for a new trial or, in the alternative, to alter or amend the court's judgment, pursuant to Fed. R. Civ. P. 59.  ECF No 234.  The Court denied the motion by minute order on September 28, 2015.  On November 5, 2015 Mr. Collins filed a motion for an extension of time to file notice of appeal.  ECF No. 252.  He indicated that he "completely forgot about the deadline for filing his Notice of Appeal" due to a serious medical issue involving his granddaughter that distracted him.  He simultaneously filed a notice of appeal.  ECF No. 252-1.

The notice of appeal from the judgment on the merits was due within 30 days after the entry of the judgment.  Fed. R. App. P. 4(a)(1).  Even allowing three extra days pursuant to Fed. R. App. P. 26(c), the notice of appeal was due on November 2, 2015.  Therefore, he was three days late.  However, a district court may extend the time to file a notice of appeal if the party

moves for an extension within 30 days after the time prescribed by Rule 4(a) expires and the party shows excusable neglect or good cause. Fed. R. App. P. 4(a)(5)(A). I accept his motion as having shown excusable neglect. Therefore, the motion for an extension is granted. The notice of appeal from the judgment on the merits, filed November 5, 2015, is deemed timely.

I also grant his motion to restrict public access to his motion for leave to proceed on appeal pursuant to 28 U.S.C § 1915. ECF No. 253. I denied the § 1915 motion on its merits. ECF No. 257. He can, of course, appeal. But I denied permission for Mr. Collins to appeal from the granting of summary judgment "in forma pauperis," because I did not, and do not now, certify that such an appeal would be taken in good faith. In my judgment such an appeal would not be based upon a reasoned, nonfrivolous argument on the law. Nevertheless, because the motion does reveal personal information such as his street address and telephone number (and does not contain information likely to be of much public interest in any event), I find that restricted access is appropriate.

### ORDER

1. Trans Union's motion for an award of attorney's fees, ECF No. 233, is GRANTED to the extent that the Court awards Trans Union $25,248.15 in attorney's fees against the plaintiff, Michael A. Collins.

2. Trans Union's motion for an award of costs, ECF No. 232, is GRANTED to the extent that the Court awards Trans Union $1,637.58 in costs against the plaintiff, Michael A. Collins.

3. Plaintiff's motion for an extension of time to file a notice of appeal from the Court's final judgment on the merits, ECF No. 252, is GRANTED.

4. Plaintiff's motion to restrict access to his motion for leave to appeal pursuant to 28 U.S.C. § 1915, ECF No. 253, is GRANTED.

5.  An amended final judgment reflecting the awards of attorney's fees and costs will enter.

DATED this 16th day of December, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge